In the Matter of GLENBRIAR COMPANY, Respondent, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Appellant.

First Department, May 19, 1983

**APPEARANCES OF COUNSEL**

*Cullen S. McVoy* of counsel (*Ellis S. Franke,* attorney), for appellant.

No appearance on behalf of respondent.

**OPINION OF THE COURT**

Ross, J.

On February 14, 1980, the tenant of a rent-stabilized apartment, No. 1407, located at 4555 Henry Hudson Parkway, Bronx, New York, filed with respondent New York City Conciliation and Appeals Board (CAB) a complaint of rent overcharge against the owner of the building, the Glenbriar Company (owner).

The tenant's complaint concerns an interpretation of section 20 (subd C, par [1]) of the Code of the Rent Stabilization Association of New York City, Inc. Under that section, an owner can obtain a rental increase if he installs new equipment, with the written consent of the tenant in

occupancy. The complaining tenant alleged that she never gave her consent. In the owner's answer, it presented evidence that new kitchen equipment had been installed at a total cost of $579.14. After considering all of the evidence, on May 14, 1981, CAB rendered Opinion No. 16,308, which found in respect to section 20 (subd C, par [1]): "that the equipment was installed in 1978, during the lease term of a prior tenant (and) for this reason plus the fact that the owner did not submit any evidence of a written agreement by the tenant in occupancy to pay an increase for the new equipment, an allowance for new equipment is denied" (material in parenthesis added).

Accordingly, CAB, as a result of its determination on the new equipment issue, as well as making some other adjustments, directed the owner to roll back the rent to the stabilized amount, and to credit or refund to the tenant all previous overcharges.

By notice, dated September 8, 1981, the owner (petitioner) commenced a CPLR article 78 proceeding to challenge CAB's determination.

This proceeding was first noticed on Special Term's calendar for September 30, 1981.

Due to CAB's heavy case load, it is undisputed that CAB obtained three adjournments on consent, evidenced by written stipulation. Thus, the proceeding appeared on the December 21, 1981 calendar of Special Term, marked final. On that date, counsel for CAB appeared in Special Term with a written stipulation, in which counsel for both sides agreed to an adjournment of two weeks until January 5, 1982. In appearing in Special Term to avoid default, with this further stipulation, CAB counsel was following the exact procedure suggested by *Eaton v Equitable Life Assur. Soc. of U. S.* (56 NY2d 900). The court wrote in that case (at p 903): "Respondent here could have * * * sought a *written stipulation* pursuant to CPLR 2104, the provisions of which are, of course, designed to forestall * * * [default]" (material in brackets and emphasis added).

Despite this stipulation of adjournment, which was evidence that petitioner's experienced counsel did not consider this short delay prejudicial, Special Term, on its own, rejected the application and marked the matter submitted.

When counsel for CAB applied for time to file answering papers the petitioner did not oppose; but Special Term again denied that application and marked the matter "default" against CAB. Thereafter, Special Term granted the petition, without discussing the merits.

Promptly, on January 13, 1982, by order to show cause, CAB moved to vacate the default. In support of its motion, CAB submitted an affidavit, which set forth: (1) the excuse for its failure to file an answer to the petition on December 21; and (2) the merits of its opposition to the petition. CAB's chief of the division of litigation pointed out in his affidavit: "The Board does not take lightly its deadlines for the submission of papers to Court. However, the Board's litigation staff is confronted with the fact that in the last two years its case load has more than doubled, while the litigation staff * * * has not increased at all until October of 1981, and then by only one, entry level attorney. This means that essentially the same staff is now preparing twice as many Article 78 proceedings* to be argued or submitted at Special Term in several boroughs of New York City, as well as appeals in the Appellate Courts." Petitioner opposed the motion.

Special Term denied CAB's motion to vacate the default, upon the basis that it lacked the discretion to do otherwise, under section 660.8 (subd [a], par [7]) of the Bronx and New York Counties Supreme Court Rules (22 NYCRR). The rule in issue reads: "(7) Any noticed motion may be adjourned by a signed stipulation but not more than three times nor for more than 60 days." Concededly, CAB has had three adjournments and this proceeding has been pending for more than 60 days.

We reject Special Term's rigid interpretation of our rule. If we allowed the order to stand, the victim would be the innocent tenant, who is not a party to this appeal. That tenant, without a resolution on the merits, would be required to continue to pay rent that CAB has found on the merits to be illegal. We find that there is merit in CAB's opposition to the petition. The majority view (8 Weinstein-

---

* For example, in the first quarter of 1982, the four-attorney CAB litigation staff was handling 90 article 78 proceedings as well as 17 appeals pending in the Appellate Divisions and the Court of Appeals.

Korn-Miller, NY Civ Prac, par 7804.07) on the issue of resolving article 78 petitions by default judgment is expressed in *Matter of Abrams v Kern* (35 AD2d 971). The court wrote in that case (at p 972): "A proceeding such as this, to annul an administrative body's determination, should not be concluded in the petitioner's favor merely upon the basis of a failure to answer the petition on the return date thereof, unless it appears that such failure to plead was intentional and that the administrative body has no intention to have the controversy determined on the merits".

Special Term overlooked CPLR 2004, which provides it with discretion to "extend the time" under the instant rule. This section reads: "Except where otherwise expressly prescribed by law, the court may extend the time fixed by any statute, *rule* or order for doing any act, upon such terms as may be just and upon good cause shown, whether the application for extension is made before or after the expiration of the time fixed" (emphasis added).

"CPLR 2004 is derived from section 98 of the Civil Practice Act with no substantial change" (2A Weinstein-Korn-Miller, NY Civ Prac, par 2004, p 20-18, entitled "Former counterparts"). Almost 60 years ago in *Fiorello v New York Prot. Episcopal City Mission Soc.* (217 App Div 510, 512) we held that section 98 could be used to enlarge the time set forth in rules. CPLR 2004 requires no change from the approach taken in *Fiorello v New York Prot. Episcopal City Mission Soc. (supra)*. The Court of Appeals recently wrote in *A & J Concrete Corp. v Arker* (54 NY2d 870, 872): "We would note that the courts enjoy a somewhat broader range of discretion when considering a motion for an extension of time under CPLR 2004."

While CAB's excuse of an overloaded staff may be described by some as law office failure (*Barasch v Micucci*, 49 NY2d 594), under the circumstances of this case, we exercise our discretion (*Miskiewicz v Hartley Rest. Corp.*, 58 NY2d 963), and grant CAB's motion. CAB's default was not aggravated (see *Solargen Electronics v General Elec. Co.*, 86 AD2d 792). Their counsel was present on the return date with a written stipulation and he quickly moved to vacate default. Our examination of the record convinces us

that "petitioner landlord [cannot] show any prejudice if the default were opened" (*Matter of Charleswood Realty Co. v New York City Conciliation & Appeals Bd.,* 78 AD2d 797).

Accordingly, the judgment, Supreme Court, New York County (BLYN, J.), entered March 11, 1982, which denied the motion of respondent New York City Conciliation and Appeals Board to vacate its default, is unanimously reversed, on the law, on the facts, and in the exercise of discretion, motion granted, judgment vacated, and the matter is remanded to Special Term for further proceedings, without costs.

MURPHY, P. J., SANDLER, SULLIVAN and ASCH, JJ., concur.

Judgment, Supreme Court, New York County, entered on March 11, 1982, unanimously reversed, on the law, on the facts, and in the exercise of discretion, motion to vacate default granted, the judgment vacated, and the matter remanded to Special Term for further proceedings, without costs and without disbursements.